1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11    SEAN DION ROSS,
CDCR #BX-0976

12

13                                        Plaintiff,

14                    vs.

15    SHLAMAN, LEACH, R. PAGE, CITY OF
SAN DIEGO,

16                                        Defendants.

17

Case No.:  3:24-cv-1078-CAB-KSC

**ORDER: (1) GRANTING MOTION
TO PROCEED IN FORMA
PAUPERIS [ECF No. 2] AND**

**(2) DISMISSING COMPLAINT
WITHOUT PREJUDICE AND
WITH LEAVE TO AMEND**

18                        **I.    INTRODUCTION**

19        On June 20, 2024, Sean Dion Ross ("Plaintiff" or "Ross"), an inmate currently

20    housed at California Substance Abuse Treatment Facility and proceeding *pro se*, filed a

21    civil rights action pursuant to 42 U.S.C. § 1983, along with Motion to Proceed In Forma

22    Pauperis ("IFP"). ECF Nos. 1, 2. In his Complaint, Plaintiff alleges his Fourth Amendment

23    rights were violated when San Diego police officers searched his apartment without a

24    warrant. ECF No. 1 at 3. For the reasons discussed below, the Court grants Ross's IFP

25    motion and dismisses the Complaint without prejudice and with leave to amend.

26                    **II.    MOTION TO PROCEED IFP**

27        All parties instituting any civil action, suit or proceeding in a district court of the

28    United States, except an application for writ of habeas corpus, must pay a filing fee of

$405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Ross provided a copy of his prison certificate and trust account statement. ECF No. 2 at 5–7. During the six months prior to filing suit, Plaintiff had an average monthly balance of $78.38, average monthly deposits of $64.80, and an available account balance of $160.15 at the time he filed suit. *Id.* at 5. Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $15.68 pursuant to 28 U.S.C. § 1915(b)(1). However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee");

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

1    *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve"

2    preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the

3    lack of funds available to him when payment is ordered."). The CDCR must thereafter

4    collect the full balance of the $350 total fee owed in this case and forward payments to the

5    Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

6    **III.    SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)**

7    **A.    Legal Standards**

8    Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the Court must screen a

9    prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous,

10   malicious, fails to state a claim, or seeks damages from defendants who are immune. *See*

11   *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*,

12   621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has

13   failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the

14   same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."

15   *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a

16   complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible

17   on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

18   While detailed factual allegations are not required, "[t]hreadbare recitals of the elements

19   of a cause of action, supported by mere conclusory statements, do not suffice" to state a

20   claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-

21   harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

22   To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation

23   of a right secured by the Constitution and laws of the United States, and (2) that the

24   deprivation was committed by a person acting under color of state law." *Tsao v. Desert*

25   *Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

26   **B.    Plaintiff's Allegations**

27   Plaintiff alleges that on February 14, 2024, San Diego police officers were

28   responding to a call reporting "a person on a rooftop." ECF No. 1 at 3. Ross states that

"instead of going through the maintenance door, Officers Schlaman and Leach entered apartment #325 and started searching [the] premises." *Id.* At some point, Schlaman and Leach left the apartment but "later came back and searched the property while [Ross] was in the hospital." *Id.* Ross states this search took place at approximately 2:14 a.m. At some point during the night Ross was transferred from the hospital to San Diego County Jail, where he was "booked at 6:00 a.m." *Id.* At about 8:00 a.m., while Ross was still in jail, Schlaman and Leach obtained a search warrant for the residence. *Id.*

Ross was subsequently charged with two counts of possession of a controlled substance, one count of maintenance of a narcotic house, and being under the influence of a controlled substance. Detective Page "signed off . . .on [Ross's] arrest report." *Id.* at 5. The charges against Ross were dropped "six months later." *Id.* The City of San Diego "knew" that Ross's residence had been searched "illegally" but "still pursued the charges for six months." *Id.* As a result, Plaintiff was evicted, lost property and became homeless. *Id.*

**C.    Discussion**

In his Complaint, Ross contends his Fourth Amendment right to be free from unreasonable searches was violated when officers entered his residence and searched it without a warrant. *Id.* at 3–5. He names four defendants: Schlaman, Leach, Page and the City of San Diego. *Id.* at 2.

First, Ross alleges his Fourth Amendment rights were violated when Officers Schlaman and Leach entered and searched his apartment without a warrant. ECF No. 1 at 3. The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). It is well established that "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Payton v. New York*, 445 U.S. 573, 590 (1980); *see also LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000). But there are exceptions to the warrant requirement, even as to residential searches. The Supreme Court has held, for instance, that "law enforcement officers may enter private property without a warrant

1    when certain exigent circumstances exist, including the need to render emergency

2    assistance to an injured occupant or to protect an occupant from imminent injury." *Caniglia*

3    *v. Strom*, 593 U.S. 194, 198 (2021) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011))

4    (internal quotation marks omitted).

5         Here, Ross has failed to allege sufficient facts to state a Fourth Amendment claim

6    against Officers Schlaman and Leach. Plaintiff's allegations do not adequately explain the

7    circumstances under which the officers entered Ross's apartment. He states officers were

8    responding to a report of a "person on a rooftop," which raises the question of whether

9    exigent circumstances existed for an unauthorized entry. Ross also states that he was

10   hospitalized and placed under arrest that evening (it is unclear in what order) but provides

11   no facts as to when these events occurred relative to the purported warrantless entry, or

12   what caused the need for Plaintiff to be hospitalized. In sum, the general lack of clarity as

13   to the timeline of events makes it impossible to determine whether exigent circumstances,

14   or any other exception to the warrant requirement may apply. Therefore, as currently

15   pleaded, Plaintiff has failed to state a Fourth Amendment claim against Schlaman and

16   Leach. *See Iqbal*, 556 U.S. at 678.

17        Furthermore, to the extent Ross alleges Detective Page violated his constitutional

18   rights because he knew Schlaman and Leach had conducted a warrantless search but

19   nonetheless "signed off" on the police report (ECF No. 1 at 5), he fails to state a claim.

20   There is no respondeat superior liability under § 1983, and defendants cannot be held liable

21   simply by virtue of their supervisory roles. *See Iqbal*, 556 U.S. at 676 ("Government

22   officials may not be held liable for the unconstitutional conduct of their subordinates under

23   a theory of respondeat superior."). Instead, a plaintiff must allege "personal involvement

24   in the constitutional deprivation" or "a sufficient causal connection between the

25   supervisor's wrongful conduct and the constitutional violation.'" *See Jones v. Williams*,

26   297 F.3d 930, 934 (9th Cir. 2002). There are no facts in the Complaint suggesting Page

27   was present for, or played any role in, the alleged unlawful search. As such, Ross has failed

28   to state a claim against Page. *See Iqbal*, 556 U.S. at 678.

1      Finally, Ross fails to state a claim against the City of San Diego. A municipality is

2  liable for constitutional violations only where its own policy, custom, or practice is the

3  "moving force" behind the violation. *See Monell v. Dep't of Soc. Servs. of City of New*

4  *York*, 436 U.S. 658, 690–91 (1978). Ross has made no such allegations in his Complaint.

5  He alleges only that the City of San Diego is liable based on its status as they "employer"

6  of the officers. ECF No. 1 at 4. As such, he has failed to allege sufficient facts to state a

7  claim against the City. *See Iqbal*, 556 U.S. at 678.

8      For the above reasons, the Court DISMISSES the Complaint in its entirety without

9  prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556

10  U.S. at 678.

11      **D.    Leave to Amend**

12      In light of Plaintiff's pro se status the Court **GRANTS** him leave to amend. *See*

13  *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not

14  dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C.

15  § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint

16  could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th

17  Cir. 2012)).

18      **IV.   CONCLUSION AND ORDER**

19      For the reasons set forth above, the Court hereby:

20      1.    **GRANTS** Plaintiff's Motion to proceed IFP pursuant to 28 U.S.C. § 1915(a)

21  (ECF No. 2).

22      2.    **ORDERS** the Secretary of the CDCR, or his designee, to collect from

23  Plaintiff's trust account the $15.68 initial filing fee assessed, *if those funds are available*

24  *at the time this Order is executed*, and forward whatever balance remains of the full $350

25  owed in monthly payments in an amount equal to twenty percent (20%) of the preceding

26  month's income to the Clerk of the Court each time the amount in the account exceeds $10

27  pursuant to 28 U.S.C. § 1915(b)(2).

28      3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff

1  Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via

2  U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

3    4.    **DISMISSES** the Complaint without prejudice and with leave to amend for

4  failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5    5.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in

6  which to file a First Amended Complaint which cures the deficiencies of pleading noted in

7  this Order. Specifically, Plaintiff's Amended Complaint must be complete by itself without

8  reference to any previous version of his pleading; Defendants not named and any claims

9  not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR

10  15.1; *Hal Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims

11  dismissed with leave to amend which are not re-alleged in an amended pleading may be

12  "considered waived if not repled"); *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896

13  F.2d 1542, 1546 (9th Cir. 1989). If Plaintiff fails to timely amend, the Court will enter a

14  final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir.

15  2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a

16  district court may convert the dismissal of the complaint into dismissal of the entire

17  action.")

18  **IT IS SO ORDERED.**

19  Dated:  September 26, 2024

20  

21    Hon. Cathy Ann Bencivengo
    United States District Judge

22

23

24

25

26

27

28